STATE OF VERMONT
ENVIRONMENTAL COURT

|   |   |   |
|---|---|---|
| | } | |
| In re: Feeley Construction Permits | } | |
| Nos. 19687 & 21006 | } | Docket Nos. 4-1-10 Vtec  & 5-1-10 Vtec |
| (Appeals of Doane) | } | |
| | } | |

Decision and Order on Motion for Summary Judgment to Dismiss as Untimely

In January of 2010, Appellants Frederick and Heike Doane (Appellants) filed the above-captioned appeals from two concurrently issued decisions of the Development Review Board (DRB) of the Town of Colchester, ruling that Appellants' attempted appeals of two zoning permits issued to Appellees Richard and Theresa Feeley (Appellees) were untimely.  In Docket No. 4-1-10, Appellants seek to appeal the DRB's decision regarding permit #19687, issued on August 15, 2005, which authorized Appellees to construct a replacement shed, replacement set of stairs, and new decks on their property.  In Docket No. 5-1-10, Appellants seek to appeal the DRB's decision regarding permit #21006, issued on June 26, 2008, which authorized Appellees to construct a second replacement deck and set of stairs on their property.

Appellants are represented by Robert T. Gaston, Esq.; Appellees are represented by Matthew T. Daly, Esq.; and the Town is represented by Thomas G. Walsh, Esq.


Appellees have moved to dismiss the appeal as untimely, or in the alternative have moved for summary judgment.  Although Appellees initially moved to dismiss under V.R.C.P. 12(b), which allows parties to move for judgment on the pleadings alone, both Appellants and Appellees have submitted affidavits and other evidence for the Court to consider.  Therefore, as provided in V.R.C.P. 12(c), the present motion will be treated only as one for summary judgment under V.R.C.P. 56, as "matters outside the

pleadings have been presented to and not excluded by the court." V.R.C.P. 12(c); see also, e.g., In re UVM Construction and Landscape Permit, No. 169-8-08 Vtec, slip op. at 1 (Vt. Envtl. Ct. Mar. 12, 2009) (Wright, J.). A grant of "summary judgment is appropriate when, giving the benefit of all reasonable doubts and inferences to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Gade v. Chittenden Solid Waste Dist., 2009 VT 107, ¶ 7 (citing Mooney v. Town of Stowe, 2008 VT 19, ¶ 5, 183 Vt. 600 (mem.); V.R.C.P. 56(c)). The facts stated in this decision are undisputed unless otherwise noted.

Factual and Procedural Background

Appellees own a parcel of property located at 73 Irish Cove in Colchester, which contains a seasonal dwelling or camp structure that Appellees use during the summer months. The property is located on the shoreline of Lake Champlain in the Shoreland zoning district. Access to the property is by a private, dead-end road marked "Irish Cove," which leads from the nearest public right-of-way, Marble Island Road.

Appellants currently own a parcel of property with the address of 1021 Marble Island Road that is adjacent to Appellees' parcel, also with frontage on the shoreline of Lake Champlain. Access to Appellants' property is directly from Marble Island Road.

Appellants previously owned a condominium located at 1067 Marble Island Road, which they acquired in June of 2005. They were regularly present at the condominium during its remodeling from June of 2005 through January of 2006. During the summer of 2008, they were residing at the condominium at 1067 Marble Island Road during the construction of their current residence at 1021 Marble Island Road.

2

<u>2005 Zoning Application & Permit</u>

On August 11, 2005, Appellees submitted zoning permit application #19687 (the 2005 Application), which sought approval to do the following work on their property: to replace an existing set of stairs leading from the road down to the camp building; to replace an existing 6′ x 7′ shed with a new 8′ x 10′ shed adjacent to the stair landing; to construct an 8′ x 10′ deck over the new shed; and to construct a new 10′ x 17′ deck adjacent to the camp building down near the elevation of the lake.  Appellees attached five diagrams or drawings to the 2005 Application form: one diagram depicting the existing layout of the property; two diagrams depicting plan views of the proposed layout, setbacks, and construction; one drawing showing the west or lake side elevation of the proposed new shed and stairs; and one drawing showing the south side elevation of the whole property from the road down to the lake, including the new stairs, the new shed, the new decks, and the existing camp building.  Appellees' signatures appear on the 2005 Application below the statement that "[w]e certify that all information, including attachments, in this application are complete, true and accurate."

The Zoning Administrator approved the 2005 Application on August 15, 2005, granting Appellees zoning permit #19687 (the 2005 Zoning Permit).  The approval, which is noted on the application form itself, also shows the following requirement in the area on the form marked for "Development Review Board Stipulations": "no further encroachment toward lake."  No party suggests that the DRB in fact issued any decision regarding the 2005 Zoning Permit.

Upon receiving the 2005 Zoning Permit on August 15, 2005, Appellees were required by statute to post "a notice of permit . . . within view from the public right-of-way most nearly adjacent to the subject property until the time for appeal . . . has

3

passed." 24 V.S.A. § 4449(b).[1]  Appellants assert that Appellees either failed to post the notice of permit at all, or failed to post notice within view from the public right-of-way of Marble Island Road.  Appellants' Objection to Appellees' Motion to Dismiss or for Summary Judgment, at 4–6 (Mar. 4, 2010) [hereinafter Appellants' Objection to Appellees' Motion].

The 2005 Zoning Permit stated that "[c]onstruction shall not commence before 8/30/05," that is, fifteen days after the issuance of the permit.  This fifteen-day period represents the period during which interested persons could appeal the Zoning Administrator's action to the DRB, as provided in 24 V.S.A. § 4465(a).[2]  Interested persons seeking to appeal the Zoning Administrator's issuance of the 2005 Zoning Permit therefore had from August 15, 2005, through August 30, 2005, to file a timely appeal with the DRB; no such appeal was filed within the fifteen-day period.

After receiving the 2005 Zoning Permit, at some time prior to October 11, 2005, Appellees completed the proposed work.  At no time during construction did any party seek to take a late appeal of the 2005 Zoning Permit to the DRB, nor did any party raise the issue at that time that the posting of the notice of permit was deficient.

On October 11, 2005, the Zoning Administrator inspected the completed work and issued a Certificate of Occupancy/Compliance to Appellees.[3]  No party appealed to

---

[1] In addition, "[w]ithin three days following the issuance of a permit," the Administrative Officer was required by statute to "[p]ost a copy of the permit in at least one public place in the municipality until the expiration of 15 days from the date of issuance of the permit."  Id. § 4449(b)(2).  No party suggests that the Administrative Officer failed to properly post the 2005 Permit in accordance with 24 V.S.A. § 4449(b)(2).

[2] See 24 V.S.A. § 4465(a) (stating that "[a]n interested person may appeal any decision or act taken by the administrative officer in any municipality by filing a notice of appeal . . . within 15 days of the date of that decision or act"); id. § 4449(a)(3) (stating that "[n]o permit issued pursuant to this section shall take effect until the time for appeal . . . has passed").

[3] See Town of Colchester Zoning Regulations § 11.04 [hereinafter Zoning Regulations], available at http://colchestervt.gov/PlanningZ/zoningregs.shtml ("It shall be unlawful to

4

the DRB the Zoning Administrator's action in issuing the Certificate of Occupancy/Compliance.

2008 Zoning Application & Permit

On June 25, 2008, Appellees submitted zoning permit application #21006 (the 2008 Application), which sought approval to "construct/replace deck – accessible + stairs." The application form described the size of the then-existing decks as being 12' x 18' and 12' x 12' ±, and the existing shed as being 8' x 10' in area, and stated the size of the proposed deck as 12' x 36' ±. Appellees attached four documents to the 2008 Application form: one diagram depicting the existing layout of the property, two diagrams depicting the proposed layout and construction, and a hand-written description of some of the proposed work. As with the 2005 Application, Appellees' signatures appear on the 2008 Application below the statement that "[w]e certify that all information, including attachments, in this application are complete, true and accurate."

On June 26, 2008, the Zoning Administrator approved the 2008 Application, granting Appellees building permit #19687 (the 2008 Zoning Permit). Like the 2005 Zoning Permit, the approval was noted on the application form itself, and contained the notation in the area on the form marked for "Development Review Board Stipulations": "no further encroachment toward lake."

---

use, occupy or permit the use or occupancy of any land or structure or part thereof created, erected, changed, converted, or wholly or partly altered or enlarged in its use until the Zoning Administrator or designee issues a certificate of occupancy or compliance stating that such structure or land development conforms to all approved plans and specifications and the requirements of these regulations."); 24 V.S.A. § 4449(a)(2) ("If the bylaws so adopted so provide, it shall be unlawful to use or occupy or permit the use or occupancy of any land or structure, or part thereof, created, erected, changed, converted, or wholly or partly altered or enlarged in its use or structure . . . until a certificate of occupancy is issued therefor by the administrative officer, stating that the proposed use of the structure or land conforms to the requirements of those bylaws.").

As with the 2005 Zoning Permit, Appellees were required by statute to post a "notice of permit . . . within view from the public right-of-way most nearly adjacent to the subject property" until the time for appeal had passed.   24 V.S.A. § 4449(b).[4] Appellants assert that Appellees either failed to post a notice at all, or failed to post notice within view from a public right-of-way.

The 2008 Zoning Permit stated that "[c]onstruction shall not commence before 7/11/08," fifteen days after the issuance of the permit.  Interested persons seeking to appeal the Zoning Administrator's issuance of the 2008 Zoning Permit therefore had from June 26, 2008, through July 11, 2008, to file a timely appeal with the DRB; no such appeal was filed within the fifteen-day period.

After receiving the 2008 Zoning Permit, at some time prior to July 24, 2008, Appellees completed the proposed work.[5]  At no time during construction did any party seek to take a late appeal of the 2008 Zoning Permit to the DRB, nor did any party raise the issue at that time that the posting of the notice of permit was deficient.

On July 24, 2008, the Zoning Administrator inspected the completed work and issued a Certificate of Occupancy/Compliance to Appellees.  No party appealed to the DRB the Zoning Administrator's action in issuing the Certificate of Occupancy/Compliance.

---

[4]  As with the 2005 Zoning Permit, no party suggests that the Administrative Officer failed to properly post notice of the 2008 Zoning Permit in accordance with 24 V.S.A. § 4449(b)(2).

[5]  Appellants stated that their own construction at their present property adjoining Appellees' property was ongoing in the summer of 2008, but they have not stated when or under what circumstances they first became aware of the construction done on Appellees' property pursuant to the 2005 and 2008 Zoning Permits.

<u>Appellants' Meeting with Town Officials Regarding the Feeley Property</u>

As characterized by the DRB in the minutes of the November 18, 2009 hearing, in March of 2009, Mr. Doane received information that Mr. Feeley had alleged that Mr. Doane was cutting trees in the Shoreland setback. <u>In re: Property of Richard & Theresa Feeley</u>, Permit #19687 & #21006, Findings of Fact, at 2 (Town of Colchester DRB Dec. 9, 2009) [hereinafter 2009 DRB Decisions]. In response, Mr. Doane inspected the Feeley property, was "surprised" by how large the decks and stairs were that were located in the Shoreland District setback, and commenced a review of the Planning and Zoning Department files. <u>Id</u>.

On September 24, 2009, Appellants met with the Director of Planning and Zoning and the Zoning Administrator for the Town of Colchester. Appellants' Supplemental Objection to Applicant's Motion, at 1 (Mar. 10, 2010) [hereinafter Appellants' Supplemental Objection]; Appellants' Reply to Town's Memorandum in Support of Dismissal, at 3 (Mar. 18, 2010) [hereinafter Appellants' Reply to Town's Memorandum]. Appellants state that during that meeting they gave the Director of Planning and Zoning and the Zoning Administrator "information as to various zoning violations" on the Feeley property. Appellants' Supplemental Objection, at 1. More specifically, Appellants state that they met with the Town officials and provided them with a "written submission" regarding zoning violations on the Feeley property. Appellants' Reply to Town's Memorandum, at 3.[6]

Appellants contend that their oral and written statements presented at the September 24, 2009 meeting, as well as their later "appeal and submissions to the DRB," in effect constituted their request for the Zoning Administrator or the Town to take

---

[6] In a letter dated October 8, 2009, the Town's attorney refers to this "written submission" as "an unsigned memorandum/outline highlighting [Appellants'] concerns." Letter from Thomas G. Walsh, Colchester Town Attorney, to Appellants (Oct. 8, 2009). The parties have not provided the Court with a copy of this "written submission."

enforcement action against Appellees. Appellants' Reply to Town's Memorandum, at 3. It is not clear from their argument whether Appellants believed that they were requesting the Town's enforcement of the terms of the permits or whether they were seeking enforcement of the Zoning Regulations, despite what was allowed by the terms of the unappealed 2005 and 2008 Zoning Permits. See generally Appellants' Reply to Town's Memorandum, at 1–2.

By letter dated October 8, 2009, the Town attorney responded to Appellants on behalf of the Town, referring to the issues discussed at the September 24 meeting and further raised in the "unsigned memorandum/outline highlighting [Appellants'] concerns." Letter from Thomas G. Walsh, Colchester Town Attorney, to Appellants (Oct. 8, 2009). The letter informed Appellants that "[p]ursuant to the exclusivity-of-remedy provision of § 4472(d), the Town and all interested parties are precluded from challenging the Feeley[s'] previous permits . . . [a]s no one took issue with the permits . . . by filing an appeal within the appeal periods," which made them "final and binding." Id. The letter also stated that the 2005 and 2008 Certificates of Occupancy/Compliance, which were not appealed and became final, also precluded Appellants from challenging the two permits. Id. Appellants contend that the October 8 letter was an appealable "decision not to enforce the zoning laws," even though it was issued by the Town's attorney rather than by the Zoning Administrator. Appellants' Supplemental Objection, at 2.


Appellants' Appeals to the DRB

On October 15, 2009, Appellants filed two appeals with the DRB: one regarding the 2005 Zoning Permit and one regarding the 2008 Zoning Permit. The appeals were filed with the DRB more than four years after the 2005 Zoning Permit and the 2005 Certificate of Compliance were issued and more than a year after the 2008 Zoning Permit and the 2008 Certificate of Compliance were issued.

The parties have not provided the Court with the notices of appeal that were initially filed with the DRB, and therefore material facts have not been provided to the Court as to how Appellants characterized their appeal to the DRB. The DRB decisions characterize the appeals as being appeals of the issuance of the permits, and not as being appeals from any request to enforce the terms of the permits. 2009 DRB Decisions, at 3. As described by the DRB, Appellants cited the following three grounds for their appeals of the permits: that there was "defective notice of the appeal period" as required by 24 V.S.A. § 4449; that there was a "misstatement of material fact on the application warranting refusal of [each] permit"; and that the permits were "issued in violation of the Colchester Zoning Regulations." Id. at 1, 2.

The DRB held a consolidated hearing on the two appeals on November 18, 2009. As reflected in the 2009 DRB Decisions, at the hearing Appellants' attorney "stated that it is their position that they do have a right to appeal the permits" based on their assertion that Appellees failed to post proper notice. Id. at 3. In response, Appellees' attorney stated that the Feeleys "did properly and prominently display the notices for application of building permits." Id.

The DRB issued concurrent decisions regarding the two appeals on December 9, 2009, which upheld both zoning permits on the ground that the appeals were untimely under 24 V.S.A. § 4465(a), and therefore that "all parties, including the Town, are bound per [24 V.S.A. § 4472(d)]." Id. The 2009 DRB Decisions on appeal do not refer to any claim made by Appellants that they had requested the Zoning Administrator to enforce the permits or the Zoning Regulations, nor do the decisions refer to the September 24, 2009 meeting with the Town officials or to any written requests or documents filed by Appellants at that meeting.

Appellants appealed the 2009 DRB Decisions to this Court in the present appeals. The notices of appeal filed with this Court state that Appellants seek to appeal the 2009 DRB Decisions, which upheld the 2005 and 2008 Zoning Permits, and also state that

9

"[t]he appeal is taken against [Appellees] and the Town of Colchester for failing to follow and enforce the Town's Zoning Regulations."

Appellants' Motion for Summary Judgment

In a de novo appeal such as this, "the Court sits in place of the ZBA to consider what was before the ZBA, applying the substantive standards that were applicable before the ZBA." In re: Kibbe Zoning Permit, No. 173-8-07 Vtec, slip op. at 1–2 (Vt. Envtl. Ct. Nov. 6, 2008) (Wright, J.) (citing V.R.E.C.P. 5(g); 10 V.S.A. § 8504(h)). That is, the scope of this de novo appeal is limited to what was before the DRB. See, e.g., In re Maple Tree Place, 156 Vt. 494, 500 (1991) (stating that the "court is limited to consideration of the matters properly warned as before the local board" (citing In re Torres, 154 Vt. 233, 235 (1990))).

Under the statutory scheme governing appeals to the Environmental Court, actions of the Zoning Administrator cannot be appealed directly to this Court; they must first be appealed to the DRB. Only decisions of the DRB (or other municipal panel) can be appealed directly to this Court. See 24 V.S.A. § 4465 (setting forth procedure for appealing decisions of administrative officers to municipal panels); id. § 4471 (setting forth procedure for appealing decisions of municipal panels to the Environmental Court).

Additionally, in order to appeal a decision of the DRB to this Court, an appellant must have standing to bring the appeal, as provided in 24 V.S.A. § 4471 and § 4465.[7] Under this statutory scheme, in order to have standing to appeal a decision of the DRB to this Court, an appellant must qualify as an "interested person" under 24 V.S.A. § 4465 and must have "participated" in the DRB hearing at the municipal level. Id.

---

[7] See 24 V.S.A. § 4471(a) (stating that an "interested person" may appeal to the Environmental Court); id. § 4465(b) (defining who qualifies as an "interested person").

§ 4471(a).[8]

To qualify as an "interested person" under 24 V.S.A. § 4465(b)(3), an individual appellant must show, among other things, that the challenged activity will have a "physical or environmental impact" on the his or her interests. A potential appellant "must fall squarely within the statutory requirements" of § 4471(a) and § 4465(b), In re Gulli, 174 Vt. 580, 582 (2002), to have standing to bring an appeal in this Court.

In the present de novo appeal, it is apparent that Appellants seek to challenge the shed, stair, and deck work authorized by the unappealed 2005 and 2008 Zoning Permits, which was subsequently approved by the unappealed 2005 and 2008 Certificates of Compliance. In bringing this appeal, however, Appellants seem to be conflating three possible actions of the Zoning Administrator related to the Feeley property and the work authorized under the 2005 and 2008 Zoning Permits. Appellants have not made clear which of these potential actions of the Zoning Administrator they claim has occurred, and which of these actions they sought to appeal to the DRB and then to this Court.

First, Appellants may be attempting to file a very late appeal of the Zoning Administrator's initial issuance of the zoning permits, which took place in 2005 and 2008. Second, Appellants may be attempting to appeal the Zoning Administrator's or the Town Attorney's response to a request made by Appellants asking the Town to enforce the terms of the zoning permits or to enforce the Zoning Regulations. Finally, Appellants may be attempting to initiate revocation of the permits, or may be attempting to appeal the Zoning Administrator's response to a request asking the Town to revoke the permits, based on their assertion that Appellees made material misrepresentations of fact in the applications.

---

[8]    Participation is accomplished by "offering, through oral or written testimony, evidence or a statement of concern related to the subject of the proceeding." 24 V.S.A. § 4471(a).

At the present time, without Appellants' written submission to the town officials at the September 24, 2009 meeting, and without their notices of appeal to the DRB, material facts are in dispute, or at least have not been provided to the Court, regarding the subject matter or scope of what was actually appealed to the DRB. Therefore, without further filings, the Court cannot determine the scope of the present proceeding and cannot rule on the motion to dismiss or for summary judgment. See, e.g., Kibbe Zoning Permit, No. 173-8-07 Vtec, slip op. at 1–2 ("[T]he Court sits in place of the ZBA to consider what was before the ZBA (citations omitted); Maple Tree Place, 156 Vt. at 500 (1991) ("[T]he court is limited to consideration of the matters properly warned as before the local board" (citation omitted)). The following analysis may assist the parties in determining what evidence to present to the Court in support of their positions on the present motion.

Appeal of the 2005 or the 2008 Zoning Permit

Based on the materials currently before the Court, it appears that Appellants are at least seeking to take a late appeal of the 2005 and 2008 Zoning Permits under 24 V.S.A. § 4465, more than four years late in the case of the 2005 Zoning Permit and more than one year late in the case of the 2008 Zoning Permit.[9] However, they have not explicitly come forward with affidavits or other evidence as to why they should be

_____

[9] Separately from the question of whether Appellants should or should not be given leave to file late appeals of the permits, Appellants do not appear to have sought to appeal either the 2005 or the 2008 Certificate of Occupancy/Compliance. Appellants have not addressed whether the 2005 and 2008 Certificates of Occupancy/Compliance—which were not challenged and became final—preclude a challenge to the work certified by those documents as being in compliance with the Zoning Regulations. See In re Tekram Partners, 2005 VT 92, ¶¶ 7–13, 178 Vt. 628 (holding that when a certificate of occupancy has been issued for a project that is in violation of a zoning ordinance, those certificates serve as an "approval" of the violations so that 24 V.S.A. § 4472(a) precludes the municipality from bringing a later enforcement action.).

12

given leave to take such a late appeal, other than to argue that it is justified if notice of those permits was properly posted at the time they were issued.[10]

Ordinarily, interested persons seeking to appeal the issuance of a zoning permit by an administrative officer must file their notice of appeal "within 15 days of the date of that decision or act." 24 V.S.A. § 4465(a). This provision provides "the exclusive remedy for contesting local zoning decisions or actions." Tekram, 2005 VT 92, ¶ 8 (citing 24 V.S.A. § 4472(a)). The DRB, in the first instance, and this Court, in this de novo appeal, lack jurisdiction to entertain an untimely appeal. 24 V.S.A. § 4472(d); see also, e.g., Boutwell v. Town of Fair Haven, 148 Vt. 8, 10 (1987) ("The failure to effect a timely appeal extinguishes subject matter jurisdiction." (citing Harvey v. Town of Waitsfield, 137 Vt. 80, 82 (1979))). The absence of a timely appeal prevents the DRB or the Court from considering the merits of an appeal, even if the administrative officer issued a permit in error or without the statutory or regulatory authority to do so. See In re Taft Corners Assocs., 162 Vt. 638, 639 (1994) (mem.) (If a timely appeal of a decision of the zoning administrator is not taken, the trial court is barred under 24 V.S.A. § 4472(d) from asserting jurisdiction "even if the administrator's ruling was ultra vires." (citing Town of Charlotte v. Richmond, 158 Vt. 354, 356 (1992); Levy v. Town of St. Albans, 152 Vt. 139, 142 (1989))); see also Tekram, 2005 VT 92, ¶ 8 (stating that courts have "'strictly enforced' [the] exclusivity-of-remedy provision to ensure timely review of all zoning disputes, thereby assuring parties of finality"); City of S. Burlington v. Dept. of Corrs., 171 Vt. 587, 588 (2000) (stating that the court has "recognized that the policy underlying the [exclusivity-of-remedy] statute is to assure parties of finality").[11]

---

[10]  In the alternative, Appellants also seem to claim that the failure to post, no matter how long ago, automatically renders the permits "null and void," requiring remand to the DRB to consider the merits of those permits at a new public hearing. Appellants' Objection to Appellees' Motion, at 7.

[11] It is important to note that, since the amendments to the zoning statute effective on July 1, 2004, the zoning statute provides that if an administrative officer issues a permit

Because Appellants filed their notices of appeal with the DRB years after the expiration of the appeal periods, both appeals are untimely and must be dismissed unless some other circumstance justifies the filing of a late appeal of either permit. Appellants argue that Appellees failed to post proper notice of the 2005 and 2008 Zoning Permits, as required by 24 V.S.A. § 4449(b), and that they are therefore justified in filing the late appeals.

First, material facts are in dispute as to if, where, and when Appellees posted the notices of the 2005 and the 2008 Zoning Permits, and therefore it is at least premature for the Court to undertake the analysis of whether deficient posting justifies the filing of a late appeal under these circumstances. However, if the Court finds that the notices of permit were not properly posted, then the remedy of allowing a four-year-late (or one-year-late) appeal is not an automatic result of this finding. Rather, if it is determined that the notices of permit were not properly posted, the Court would then need to analyze—based on further filings by the parties—the issue of "whether due process or fundamental administrative fairness requires that a party deprived of notice of a zoning permit be allowed to contest the permit, notwithstanding the strong policy interests in finality." In re Hignite, 2003 VT 111, ¶ 8, 176 Vt. 562 (mem.).[12]

_____

in error, and that permit becomes final, then the construction authorized under such a permit becomes a nonconformity that is thereafter governed by the regulatory provisions regarding nonconformities. See 24 V.S.A. § 4303(13) (defining "nonconforming lots or parcels" as a lots or parcels "that do not conform to the present bylaws covering dimensional requirements but were in conformance [with prior bylaws], including a lot or parcel improperly authorized as a result of error by the administrative officer"); see also id. § 4303(14) (defining "nonconforming structure" similarly).

[12] Echoing the United States Supreme Court, the Vermont Supreme Court has stated that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Town of Randolph v. Estate of White,

In addition to examining Applicants' arguments regarding fundamental due process, any analysis of whether Appellants should be allowed to file a late appeal of either permit would also require the Court to address whether Appellants would have had standing as an "interested person" under 24 V.S.A. § 4465(b)(3) to appeal either permit at the time of the statutory appeal period for each permit, as they did not own or live in the adjacent property at the time of the 2005 Permit.[13]  In addition, the Court would also expect Appellants to present evidence as to the reasons why they did not attempt to file a late appeal of either permit during the time that construction was ongoing pursuant to the permit, or at the time at which they first became aware of that construction. Material facts are in dispute, or at least have not been provided to the Court, on all these points; however, the Court will not reach these issues until and unless it determines that notice of the zoning permits was not properly posted under 24 V.S.A. § 4449(b) and addresses the issue of the effect of the Certificates of Occupancy/Compliance discussed in footnote 9.

---

166 Vt. 280, 283 (1997) (citing Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).  Notice that does not meet this standard does "not comport with due process requirements."  Id. at 284 (quoting Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 14 (1978)).  In order to determine what process is due to an interested party, and therefore whether the notice given to such a party is sufficient, the Vermont Supreme Court has applied the three-factor balancing test set forth in the U.S. Supreme Court case of Mathews v. Eldridge: "(1) the private interest affected by the official action, (2) the risk of an erroneous deprivation of the interest under the procedures used, and (3) the governmental interests involved, including fiscal and administrative burdens." Estate of White, 166 Vt. at 284 (citing Mathews, 424 U.S. 319, 334–35 (1976)).

[13] Under 24 V.S.A. § 4465(b)(3), Appellants would be required, among other things, to demonstrate that the work proposed under the permit sought to be appealed has "a physical or environmental impact on the [their] interest"; that impact is measured as of the appeal period.

<u>Enforcement of the Terms of Either Zoning Permit or of the Zoning Regulations</u>

Appellants argue that they have also brought an appeal of the Zoning Administrator's refusal to take enforcement action against Appellants, although it is not clear whether they sought enforcement of the terms of the permits, sought enforcement of the zoning ordinance, or seek some other relief.

If such a request was in fact made by Appellants and was then denied by the Zoning Administrator, that "decision or act" could be appealed to the DRB under 24 V.S.A. § 4465(a). See also, e.g., <u>In re Charlotte Farm & Mills</u>, 172 Vt. 607, 608 (2001) (stating that "the finality and exclusivity doctrines embodied in § 4472(d) do not preclude an interested person from taking action to ensure compliance with the terms of a zoning permit" and "[t]he fact that no one timely appealed the initial permit granted to [applicant] did not preclude neighboring property owners from later seeking review of the zoning administrator's decision that [applicant's] activities were within the scope of its permit" (citations omitted)); <u>In re Sardi</u>, 170 Vt. 623, 626 (2000) (mem.) ("The zoning administrator is authorized to enforce zoning bylaws by appropriate actions," and "interested persons . . . may appeal to the board of adjustment in the event the administrator fails to act on their complaints." (citations omitted)). However, material facts are in dispute, or at least have not been provided to the Court, as to whether or when Appellants requested the Zoning Administrator to enforce the terms of the permits, or to take any other enforcement action under the authority of 24 V.S.A. §§ 4451 and 4452.[14] If such a request was made, was denied, and the denial was sought

---

[14] The enforcement authority available to municipalities to enforce their zoning ordinances and the terms of zoning permits issued by the zoning administrative officer is distinct from the enforcement authority provided in § 4470(b), which is available both to municipalities and to individuals, but only authorizes individuals and municipalities to enforce decisions of the municipal panel—in the present case, the DRB. In the present case, Appellants do not seek enforcement of any decision of the DRB. It is important to understand that 24 V.S.A. § 4470(b) "does not provide for individuals to

to be appealed to the DRB, then the request to enforce is also before the Court in these appeals, independently of whether a late appeal of either zoning permit is allowed.

Appellants assert that they requested some type of enforcement when they met with the Town representatives on September 24, 2009. See Appellants' Supplemental Objection, at 1 (stating that Appellants "provided . . . information as to various zoning violations on [Appellees'] property"); Appellant's Reply to Town's Memorandum, at 3 (stating that "the content of their discussion with the Town administrators on September 24, 2009[,] and written submission to them at that time" make clear Appellants' intent to "provide notice of the violations and seek enforcement of the zoning laws"). Appellants further argue that the Town Attorney's October 8, 2009 letter operated as the zoning administrator's denial of their request for enforcement, so that it was within the scope of their appeal to the DRB. Appellants' Supplemental Objection, at 1–2; Appellant's Reply to Town's Memorandum, at 2.

However, material facts are in dispute, or at least have not been provided to the Court, regarding Appellants' oral presentation at the September 24, 2009 meeting, regarding their written submission at that meeting, and regarding the notices of appeal they filed with the DRB on October 15, 2009. Accordingly, the Court cannot determine at this time whether any type of enforcement request by Appellants is properly within the scope of the present appeal.

Request for Revocation of Permits

Appellants also appear to argue that the Town should revoke the 2005 and 2008 Zoning Permits due to material misstatements or omissions of fact in the applications

---

bring direct enforcement actions for asserted violations of zoning ordinances," and that such enforcement actions can only be brought by a municipality. Whitmore v. Phillips, No. 18-1-09 Vtec, slip op. at 3 (Vt. Envtl. Ct. Mar. 12, 2009) (Wright, J.).

for both permits.[15]   However, material facts are in dispute, or at least have not been provided to the Court, regarding whether Appellants ever requested the Zoning Administrator to seek revocation of either permit based on material misrepresentations and omissions, whether the Zoning Administrator denied such a request, or whether Appellants appealed such a "decision or act" to the DRB under 24 V.S.A. § 4465(a).

After a zoning permit has become final, a municipality is authorized to seek invalidation or revocation of such a permit under 24 V.S.A. § 4455.[16]   That provision allows a municipality to petition this Court to revoke a permit, after which the Court must provide "notice and opportunity for hearing" and may revoke the permit if it determines either "that the permittee violated the terms of the permit" or that the permittee "obtained the permit based on misrepresentation of material fact."   24 V.S.A. § 4455.   However, that section does not authorize either a municipal panel or an

_____

[15] Appellants claim that both applications submitted by Appellees contained material misstatements of fact and omitted several material facts, and they argue that "if the material facts had been fully disclosed in the 2005 and 2008 Applications, the Town would have been warranted in denying the building permits."   Appellants' Objection to Appellees' Motion, at 11. See id. at 7–11 (describing several purported misstatements and omissions of material fact in the 2005 and 2008 Permit Applications, such as "contradictory" statements regarding the size and extent of the proposed work and a failure to disclose that the proposed work included "alteration of grade or earth removal" and "construction of a retaining wall").

[16] Prior to the time at which a permit becomes final, an administrative officer or municipal panel has the inherent authority to recall a permit or other decision to remedy an error; however, "any attempted unilateral reopening or alteration of an issued permit must be done by the issuing authority within the time allotted for appeal of that permit (that is, 15 days in the case of a zoning administrator's action, and 30 days in the case of the ZBA)."   In re: Appeal of Addison County Eagles, No. 13-1-00 Vtec, slip op. at 3 (citing In re Appeal of Dunn, No. 2-1-98 Vtec, slip op. at 3–6 (Vt. Envtl. Ct. Mar. 8, 1999); Nash v. Warren Zoning Bd. of Adjustment, 153 Vt. 108, 114 (1989)).   In the present appeals, any request to the Town to revoke the permits occurred, if at all, after the expiration of the appeal period for both permits.

administrative officer unilaterally to revoke a final permit. Rather, it requires the municipality to file a petition in this Court seeking such revocation.

Prior to the adoption of 24 V.S.A. § 4455, effective on June 1, 2009, this Court had upheld a zoning administrator's authority "to revoke a permit for misrepresentation, at least where the permit form warns the applicant that misrepresentation voids the permit," because "[t]o conclude otherwise would be to invite unscrupulous applicants to misrepresent the size, intended use, or location of a project on a permit application, to succeed in obtaining a permit without alerting potential opponents or the zoning administrator to problems with the project under the zoning ordinance." In re: Appeal of Hurlburt, No. 27-2-98 Vtec, slip op. at 4 (Vt. Envtl. Ct. Feb. 12, 1999) (Wright, J.); see also Addison County Eagles, No 13-1-00 Vtec, slip op. at 6 (reciting the same principle established in Hurlburt).[17]

Appellants do not explicitly claim that they requested the Zoning Administrator to seek revocation of either permit, or that they appealed a denial of that request to the DRB and hence to this Court, although they do argue that the permits are "null and void" and should be remanded for consideration by the DRB. Appellants' Objection to Appellees' Motion, at 7. Material facts are in dispute, or at least have not been provided to the Court, regarding whether Appellants made any such request at all and, if so, whether it was made before or after the effective date of 24 V.S.A. § 4455. Therefore, the

---

[17] Appellants rely on these two cases in arguing that the Zoning Administrator should unilaterally revoke both zoning permits under § 11.08 of the Zoning Regulations, which allows the Zoning Administrator unilaterally to revoke a permit "at any time," based on an applicant's "[o]mission or misstatement of any material fact . . . stated on the application or at any hearing, which could have warranted refusing the permit." Even if the subsequent change in the enabling statute—setting out a procedure in this Court for any such revocations under 24 V.S.A. § 4455—does not supersede the analysis made in these two cases, the application forms used for both permits in the present appeals did not "warn[] the applicant that misrepresentation voids the permit," Hurlburt, No. 27-2-98 Vtec, slip op. at 4, so that the analysis in Hurlburt and Addison County Eagles would not necessarily apply.

Court cannot determine at this time whether any type of request to revoke either permit may be within the scope of the present appeal.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellees' Motion to Dismiss or for Summary Judgment is DENIED at this time as material facts are in dispute. At the scheduled telephone conference (see enclosed notice), the parties should be prepared to discuss whether they wish to provide the missing information discussed in this decision through renewed motions for summary judgment, and should be prepared to discuss setting a schedule for mediation and for trial.

Done at Berlin, Vermont, this 16th day of June, 2010.

_____
       Merideth Wright
       Environmental Judge